## SC Philips Clark LLC v Shore Club Prop. Owner LLC

2024 NY Slip Op 32364(U)

July 10, 2024

Supreme Court, New York County

Docket Number: Index No.: 652489/2022

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

SC PHILIPS CLARK LLC,

Plaintiff,

- v -

SHORE CLUB PROPERTY OWNER LLC, MONROE
CAPITAL LLC, and THE WITKOFF GROUP LLC,

Defendants.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652489/2022 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 37, 38, 40

were read on this motion to/for                      DISMISS                      .

Upon the foregoing documents, it is

Plaintiff SC Philips Clark LLC (Philips) brings this action against defendants Shore Club Property Owner LLC (Owner), Monroe Capital LLC (Monroe), and the Witkoff Group LLC (Witkoff), alleging that defendants usurped plaintiff's interest in the Shore Club Hotel and the adjoining beachfront property, located in Miami Beach, Florida (Property). Plaintiff asserts causes of action for: breach of contract and breach of the implied covenant of good faith and fair dealing against Owner (first through third causes of action); tortious interference with contract and tortious interference with prospective economic advantage against Monroe and Witkoff (fourth and fifth causes of action, respectively); and aiding and abetting tortious interference with contract and prospective economic relations against Witkoff (sixth and seventh causes of action, respectively). Plaintiff seeks injunctive relief, rescission, the imposition of a constructive trust, and

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL
Motion No.  001

Page 1 of 41

compensatory damages against defendants as well as punitive damages against Witkoff and Monroe.

Defendants now move to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7).

## I.    Background

Unless indicated otherwise, the following facts are taken from the complaint and are presumed to be true.

Plaintiff's affiliate, Philips South Beach LLC (Philips Affiliate), acquired the Property in 1997 and, after extensive renovations, operated a luxury, boutique hotel. (NYSCEF Doc. No [NYSCEF] 2, Complaint at 35.)  After defaulting on the mortgage, Philips Affiliate refinanced with an affiliate of Fortress Investor Group LLC (Fortress) and, thereby, managed to retain ownership of the Property.  (*Id.* ¶¶ 6, 36.)

Philips Affiliate and Fortress then began planning a joint venture to rebrand the Shore Club Hotel and to convert a portion of it into luxury condominiums (Project). Philips Affiliate would transfer the Property, in fee simple, to a newly created, joint venture entity, while Fortress would fund the redevelopment.  The two would be equal owners in the joint venture entity.  (*Id.* ¶ 37.)  Because it became apparent that the Project needed "the involvement of an experienced and sophisticated condominium developer," Philips Affiliate and Fortress invited HFZ Capital Group LLC (HFZ) to join project.  (*Id.* ¶ 38.)  According to plaintiff, it was understood "that HFZ would be brought in on Fortress's side of the joint venture," with HFZ and Fortress bearing all the costs of the Project, while Philips Affiliate would retain its 50% stake.  (*Id.* ¶ 39.)

**652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**
**Motion No.  001**

**Page 2 of 41**

2 of 41

As planning progressed, Fortress and HFZ informed Philips Affiliate that, because of its past mortgage default, the joint venture could obtain better financing terms if, initially, Philips Affiliate did not have an equity stake. (*Id.* ¶ 40.) To facilitate the Project, Philips Affiliate agreed to relinquish its control over the Property and the Project until certain financial milestones were met, at which point it "would automatically receive 50 percent of the membership interests in the joint venture". (*Id.* ¶ 41.)

Philips Affiliate created plaintiff to be a party to this arrangement, while Fortress and HFZ created Owner and non-parties Shore Club Managing Member LLC (Sponsor) and Shore Club JV LLC (Holdings). (*Id.* ¶¶ 3, 6, 42.) On December 30, 2013, plaintiff entered into a Profit Participation Agreement (PPA) with Sponsor, Holdings, and Owner (Sponsor, together with Holdings and Owner, the "Shore Club Entities"). (*Id.* ¶ 42.) "At that time, Philips Affiliate deeded the . . . Property to Owner. Philips Affiliate later assigned to [p]laintiff all of its remaining and future interests in the . . . Property." (*Id.*)

The ownership structure was as follows. An HFZ affiliate, HFZ Shore Club LLC, and a Fortress affiliate, CFSC Holdings LLC (CFSC), each held a 50% membership interest in Sponsor, with HFZ Shore Club LLC acting as the managing member. (*See id.* ¶¶ 21, 43; NYSCEF 19, Operating Agreement of Sponsor.) Sponsor owned all the membership interest of Holdings. (NYSCEF 2, Complaint, ¶¶ 21, 43.) Holdings was the sole member of Shore Club Mezzanine II LLC (Mezz II), which was the sole member of Shore Club Mezzanine I LLC (Mezzanine Borrower), which was the sole member of defendant Owner, which held the Property in fee simple. (*Id.* ¶¶ 22, 23, 43.) In this way, Holdings indirectly owned and controlled Owner and the Property. (*Id.* ¶¶ 8, 43.)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL
Motion No. 001

Page 3 of 41

[* 3]

At the time, there were two outstanding loans that Fortress Credit Corp. ("FCC"), an affiliate of CFSC, had extended to Philips Affiliate, one for $160,497,833.77 and the second for $12,000,000 (together FCC Loans). (*See* NYSCEF 4, JV Agreement, § 10.18; NYSCF 3, PPA at recitals, schedule 1 [defining the terms "FCC" through "FCC Senior Loan"]). As part of the transfer of the Property to Owner under the PPA, Owner assumed these loans. (*See id.* at recitals, schedule 1 [defining "Loan Modification"].)

The PPA provides that in consideration for Owner acquiring the Property from Philips Affiliate, "Sponsor . . . agreed to provide Philips with (i) certain profit participation rights, (ii) certain approval rights and (iii) future equity rights". (*Id.* at 1.)

As concerns the profit participation and future equity rights, the PPA states that, upon the occurrence of a "Trigger Event," the PPA automatically terminates, an Amended and Restated Operating Agreement for Holdings (JV Agreement) becomes effective between plaintiff and Sponsor, and plaintiff's interest as a 50% member of Holdings immediately vests. Plaintiff, thereby, acquires an indirect 50% ownership interest in Owner and a right to profit participation. Under the PPA, a Trigger Event occurs upon the receipt by Sponsor of certain amounts to which it is entitled or upon the filing for bankruptcy by one of the Shore Club Entities, Mezzanine Borrower or Mezz II. (*See* NYSCEF 2, Complaint, ¶¶ 29, 48, 50; NYSCEF 3, PPA §§ 2 [a] [ii], 6, Schedule 1; NYSCEF 4, JV Agreement at 1, 10-11.) The PPA becomes null and void if a Trigger Event does not occur within 21 years of the PPA's effective date. (NYSCEF 2, Complaint, ¶ 49; NYSCEF 3, PPA, Schedule 1.)

Under the PPA's "Approval Rights" provision, Owner is prohibited from taking certain action without plaintiff's prior approval, including, in pertinent part:

**652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**
Motion No. 001

**Page 4 of 41**

4 of 41

"(b)    entering into or amending or enforcing any agreement between any Equity Party, on the one hand, and any of its Affiliates, on the other hand, other than an agreement which (i) does not relate to the Property and (ii) imposes no obligations (other than to a de minimus extent) on the Equity Party which bind or burden Owner or Holdings.

\*\*\*

"(d)    any action that would change the purpose of Holdings or the Owner or would permit Holdings or Owner to engage in any business other than the Business.

\*\*\*

"(h)    the admission of a new member into Holdings or the Owner or any other change to this Agreement which would result in the Profit Percentage of Philips being reduced below fifty percent (50%) for purposes of distributions." (NYSCEF 3, PPA § 3 [b], [d], [h].)

However, the PPA also provides that:

"The relationship between the Equity Parties and Philips is that of independent contractors, and nothing in this Agreement or otherwise shall be construed as creating the relationship of employer-employee or as creating a partnership or joint venture between any of the Equity Parties, and/or its successors or assigns, and Philips, and/or its successors or assigns.  For the avoidance of doubt, other than as expressly set forth in this Agreement: (i) Philips shall have no management, approval, consent, control, notice, veto or voting rights whatsoever with respect to actions of, or matters relating to, any Equity Party, and (ii) the Equity Parties shall have no obligations or duties whatsoever to Philips (whether at law, in equity or otherwise)." (*Id.* § 24.)

The PPA defines "Equity Parties" as "Owner, Sponsor, Holdings, [Mezzanine Borrower] and Mezz II." (*Id.* at recitals).  It defines "Affiliate" as, "with respect to any Person[,] . . . any other Person who controls, is controlled by or is under common control with such Person."  However, it also provides that, "[n]otwithstanding anything to

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 5 of 41
Motion No.  001

5 of 41

the contrary set forth herein, for purposes of this Agreement, none of FCC or the lenders under the FCC Loans shall be deemed not [sic] to be an Affiliate of the Equity Parties." (*Id.* Schedule 1.) "Business" is defined as, among other things, "completing the conversion, development and construction of the Project," "marketing and selling . . . condominium units," "obtaining financing" and "other matters related to the Project" (*Id.*)

Section 17 of the PPA contains "Restrictions on Transfer" and provides as follows:

"(a) Except as provided in this Section 17 or elsewhere in this Agreement (i.e., with respect to a sale of the Property or Bulk Sales as contemplated by Section 3 (a) above), neither Sponsor nor Philips may, directly or indirectly, by operation of law or otherwise, assign, sell, exchange, transfer, pledge, hypothecate or otherwise dispose of all or any part of its interest in Holdings or this Agreement, respectively (any such assignment, sale, exchange, transfer, pledge, hypothecation or other disposition of an interest being herein collectively called a '<u>Transfer</u>') to any Person. For purposes of this Agreement, any Transfer of any direct or indirect equity interest in Sponsor or Philips to any person or group of related persons, whether in a single transaction or a series of related or unrelated transactions, shall be deemed a Transfer of such Party's interest in Holdings or this Agreement. Notwithstanding the foregoing, the trading of shares of any Person on a public stock exchange shall not be deemed to constitute a Transfer.

\*\*\*

"(c) Notwithstanding anything to the contrary contained herein, Transfers to any Person of direct or indirect ownership interests in any Party shall be freely permitted without the prior consent of the other Party so long as one or more of the Principals of the Party shall collectively or individually maintain Control of such Party.

"(d) any pledge or encumbrance of any indirect ownership interests of Sponsor to an institutional lender in the ordinary

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL                    Page 6 of 41
Motion No.  001

6 of 41

course of such indirect owner of Sponsor's business (and the foreclosure of such pledge or encumbrance), shall be a permitted Transfer hereunder." (*Id.* § 17 [a], [c], [d].)

The PPA also provides that it

"shall inure to the benefit of and be binding upon the Parties and their respective successors and assigns; <u>provided</u>, <u>however</u>, that this Agreement shall in no event be binding on, and shall be subordinate to, any loan or other indebtedness made to or incurred by Equity Parties including, without limitation, any mortgage loan or mezzanine loan." (*Id.* § 22.)

According to defendants, in 2015, Owner obtained a senior mortgage loan with Banco Inbursa, S.A. to replace the first FCC Loan. (*See* NYSCEF 15, Defendants' Brief at 5; NYSCEF 20, Inbursa Loan Agreement.) To pay off the second FCC Loan, Mezzanine Borrower pledged 100% of its equity interest in Owner and obtained a subordinate mezzanine loan (the Mezzanine Loan) from FCC. (*See* NYSCEF 15, Defendants' Brief at 5; NYSCEF 21, Mezzanine Loan Agreement; NYSCEF 24, Pledge and Security Agreement.) By consent letter dated January 15, 2015, plaintiff consented to the Mezzanine Loan, acknowledging that FCC would be the lender and that the loan would be secured by an equity pledge of 100% of Mezzanine Borrower's equity interests in Owner. (*See* NYSCEF 15, Defendants' Brief at 5-6; NYSCEF 23, Consent Letter.) Notably, plaintiff does not dispute that Mezzanine Borrower's pledge of its interest in Owner was permitted under the PPA. (*See* NYSCEF 26, Plaintiff's Brief In Opposition at 14 n 3.)

In 2017, the Shore Club Entities stopped providing regular financial reporting required by the PPA. (NYSCEF 2, Complaint, ¶¶ 47, 62; *see* NYSCEF 3, PPA § 10.) In response, plaintiff commenced an action against Sponsor and Holdings in the Supreme

Court, New York County, entitled *SC Philip Clark LLC v Shore Club Managing Member LLC*, under index No. 650829/2018. (NYSCEF 2, Complaint, ¶ 62.) This action was later discontinued without prejudice. (*Id.* ¶ 64.)

Also in 2017, unbeknownst to plaintiff, a Monroe alter ego lent HFZ $100 million, which was later increased to $113,500,000 (the HFZ-Monroe Loan). As collateral, HFZ's owners pledged 100% of their equity interest in HFZ. This included HFZ's membership interests in the Shore Club Entities. (*See Id.* ¶¶ 75, 79; *see also* NYSCEF 8, Asher Aff, ¶¶ 9, 10.)[1] According to plaintiff, this loan was "for purposes unrelated to the re-development of the . . . Property." (NYSCEF 2, Complaint, ¶ 79.)

In 2018, HFZ abandoned the condominium conversation and notified plaintiff that it intended to operate the Property as a hotel. (*Id.* ¶ 63.) In August 2018, plaintiff commenced another action against Sponsor and Holdings in the Supreme Court, Nassau County, captioned *S.C. Philips Clark, LLC v Shore Club Managing Member LLC*, index. No. 610536/2018 ("Nassau County Action"). (*Id.* ¶ 64.) In the Nassau County Action, the parties disputed whether a Trigger Event had occurred, such that the JV Agreement went into effect and plaintiff's interest in Holdings vested, or whether the PPA remained in effect. (*Id.* ¶¶ 64-65.) The Appellate Division, Second Department, dismissed the action, finding that a Trigger Event had not occurred. (*Id.* ¶ 65.)

---

[1] The details of how Monroe and Witkoff came to control the Shore Club Entities were set forth in a December 21, 2021 affidavit of Monroe's Managing Director, Kyle Asher, in an unrelated action concerning the Property, entitled *Shabtai v HFZ Capital Group, LLC*, index No. 6353453/2021. (Sup Ct, NY County 2021) (*see* NYSCEF 2, Complaint, ¶¶ 16, 77, 78; *see also* NYSCEF 8, Asher Aff.)

**652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**          **Page 8 of 41**
**Motion No.  001**

8 of 41

[* 8]

According to defendants, in 2019, Fortress sold the Mezzanine Loan to an HFZ affiliate, Shore Club Mezzanine Lender LLC ("Mezzanine Lender"). (*See* NYSCEF 15, Defendants' Brief at 6; NYSCEF 25, Amendment to the Mezzanine Loan Agreement.) CFSC, Fortress's affiliate, provided financing to Mezzanine Lender in connection with this transaction (the "Mezzanine Loan-on-Loan"). (*See* NYSCEF 2, Complaint, ¶ 87; NYSCEF 15, Defendants' Brief at 6.) "This Mezzanine Loan-on-Loan was secured by the Mezzanine Lender's pledge of the Mezzanine Loan." (NYSCEF 2, Complaint, ¶ 87.)

By the end of 2020, HFZ was in default on the HFZ-Monroe Loan. (*Id.* ¶¶ 80.) In December 2020, in partial satisfaction of the debt, HFZ assigned its equity interests in Sponsor, Holdings, Mezzanine II, Mezzanine Borrower, and Owner, as well as Mezzanine Lender, among others, to Monroe. (*Id.*) Thus, Monroe came to own and control both Mezzanine Lender and Mezzanine Borrower. (*See id.* ¶¶ 80, 81; NYSCEF 8, Asher Aff, ¶ 11.[2]) Plaintiff alleges that "[t]he Shore Club Entities, including Owner, assented to HFZ's December 2020 assignments to Monroe (none of which were disclosed to [p]laintiff or the courts overseeing the Nassau County Action and [a later filed action in Miami-Dade County]), in clear disregard of the PPA's unequivocal prohibitions." (NYSCEF 2, Complaint, ¶ 82.)

"'[I]n the fourth quarter of 2020, Monroe engaged an affiliate of The Witkoff Group LLC, a New York-based real estate developer. . . , as an asset manager to evaluate various real estate aspects of the properties held by HFZ." (*Id.* ¶ 84, quoting Asher Aff [NYSCEF 8], ¶ 4.) Subsequently, "Witkoff became Monroe's partner in the re-development of the . . . Property." (*Id.* ¶ 85.) Plaintiff speculates that, "given his

---

[2] Plaintiff never explains what transpired regarding Fortress's interest in Sponsor.

**652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**          **Page 9 of 41**
**Motion No.  001**

9 of 41

[* 9]

decades of experience as a real estate attorney, investor, and developer, Witkoff's Chairman and CEO, Steven Witkoff, was very likely the architect of and prime mover behind" the plan that, ultimately, led to the elimination of plaintiff's unvested interest in Holdings. (*Id.*)

"At or around the time of the December 2020 assignments, the Mezzanine Loan was in default." (*Id.* ¶ 81.) However, because the Mezzanine Loan was financed by the Mezzanine Loan-on-Loan from CFSC, which was also in default, Monroe could not immediately foreclose on the Mezzanine Loan. Monroe first caused Mezzanine Lender to repay the Mezzanine Loan-on-Loan. (*Id.* ¶ 87.) Monroe was then able to conduct a strict foreclosure of the Mezzanine Loan. (*Id.* ¶ 88.)

"'[O]n May 6, 2021, pursuant to a strict foreclosure under New York's U.C.C. § 9-620, Mezzanine Borrower transferred' the membership interests of Owner to 'Mezzanine Lender in full satisfaction of the indebtedness due and owing under the Mezzanine Loan,' and Mezzanine Lender became the 100% owner of Owner." (*Id.* ¶ 88, quoting Asher Aff [NYSCEF 8] ¶¶ 15-16.) Following the strict foreclosure, "Holdings 'no longer had any assets,' as its 'sole asset had been its interest in [Owner] through' Mezzanine II and Mezzanine Borrower." (*Id.* ¶ 88, quoting Asher Aff [NYSCEF 8], ¶ 16.)

Plaintiff claims that "[n]othing about this foreclosure was done in the ordinary course" as "the Shore Club Entities improperly enabled Monroe to install itself on both sides of the mezzanine loan . . . [and] then allowed Monroe's collusive foreclosure—in which Monroe foreclosed on itself—to proceed without objection." (*Id.* ¶ 14.) According to plaintiff, this was "collusive" and "self-dealing," because "the Shore Club Entities (by then, all owned and controlled by Monroe), enabled the foreclosure, in disregard of the

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL       Page 10 of 41
Motion No.  001

10 of 41

PPA's unequivocal prohibitions." (*Id.* ¶ 86.) In addition, plaintiff alleges that the foreclosure's sole purpose was to eliminate plaintiff's unvested interest, as "it left Monroe with the same 100 percent membership stake in Owner that it had before, [while] eliminated any path to Plaintiff becoming vested in its membership and profit participation interests in Holdings, Owner, and the . . . Property by extinguishing Holdings' interest in the . . . Property." (*Id.* ¶ 89, 90.)

On June 23, 2021, Mezzanine Lender assigned its interest in Owner to Shore Club Owners JV LLC, in which Monroe holds a 75% membership interest and Witkoff holds a 25% membership interest. (*Id.* ¶ 91.)

In the meantime, in "early 2021, [p]laintiff became increasingly alarmed by a series of reports that HFZ was in dire financial straits after the revelation of . . . allegations that HFZ had attempted to defraud a creditor with fictitious wire transfers." (*Id.* ¶ 66.) In addition, HFZ's founder sued his former partner, accusing him of "misappropriate[ing] millions of dollars from HFZ to support his profligate spending habits" (*id.*, ¶ 69) and of falsifying HFZ's books and records to "show[] that HFZ's projects were properly funded, when in fact they were falling into ruin." (*Id.* ¶ 70.)

In response to rumors that HFZ might sell the Property, plaintiff commenced a third action against the Shore Club Entities, this time in Miami-Dade County, Florida, entitled *SC Philips Clark LLC v Shore Club Managing Member LLC*, Case No. 2021-005526-CA-11 (Cir Ct, 11th Jud Cir, Miami-Dade County) (the "Miami-Dade County Action"), seeking to enjoin such a sale. (*Id.* ¶ 72.) At this time, plaintiff was still unaware that "HFZ . . . had [already] assigned to Monroe the membership interests of Sponsor, Holdings, and Owner." (*Id.* ¶ 75.)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL
Motion No.  001

Page 11 of 41

11 of 41

Plaintiff learned of the transfers through a news article, dated November 15, 2021, "announc[ing] that two developers—Monroe and Witkoff—had 'acquire[d]' the . . . Property from HFZ" and that "three Witkoff executives were named the authorized signatories" of Owner. (*Id.* ¶ 76; NYSCEF 7, *The Real Deal* article dated 11/15/2021.) "Neither HFZ, nor the Shore Club Entities nor Monroe, nor Witkoff notified Plaintiff of, much less sought Plaintiff's consent to, the transfers described above." (NYSCEF 2, Complaint, ¶ 92.) In addition, none of these entities disclosed the transfers to the "the courts overseeing the Nassau County Action and Miami-Dade County Action . . . — litigations in which the ownership of the Shore Club Property was the central issue." (*Id.*)

Plaintiff then commenced this action, claiming that defendants "destroyed its interests under the PPA and JV Agreement." (*Id.* ¶ 93.) Specifically, plaintiff claims that "HFZ's pledge of [membership interests in Holdings and Owner] as collateral for HFZ's debts to Monroe was improper in the absence of disclosure to and authorization from Plaintiff." (*Id.* ¶ 94.) Plaintiff also claims the PPA "prohibited the transfer of the membership interests of Holdings and Owner, the placement of Monroe on both sides of the Mezzanine Loan, and the elimination of Holdings' business, without Plaintiff's knowledge and consent." (*Id.*)

Plaintiff further alleges, that Monroe, being represented by "top-shelf legal advisers" (*id.* ¶ 95) and "[h]aving conducted routine due diligence relating to the collateral being pledged by HFZ, . . . knew that HFZ lacked authority under the PPA to pledge the membership interests in Holdings and Owner when it accepted the pledge." (*Id.* ¶ 95.) In addition, assuming Monroe somehow was unaware of the PPA in 2017,

**652489/2022 SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL** **Page 12 of 41**
Motion No. 001

12 of 41

[* 12]

plaintiff alleges that Monroe "unquestionably knew about the PPA's transfer and other prohibitions by December 2020, when Monroe was assigned the membership interests of the Shore Club Entities", as by then plaintiff had aired its concerns in two litigations, which were a matter of public record. (*Id.* ¶¶ 96, 97, 98.) As concerns Witkoff, plaintiff alleges that, for months prior to the strict foreclosure, "Witkoff had been functioning as Monroe's partner in managing and re-developing the Shore Club Property and was familiar with the PPA and JV Agreement in that capacity." (*Id.* ¶ 103.) Plaintiff alleges that "Monroe and Witkoff induced the Shore Club Entities to breach their contractual duties to [p]laintiff, transfer (through Owner) ownership of and control over the . . . Property, and then leave Sponsor and Holdings as empty, purposeless shells." (*Id.* ¶ 104.)

## II. Analysis

On a motion to dismiss a complaint for failure to state a cause of action, "the pleadings are necessarily afforded a liberal construction" and plaintiffs are accorded "the benefit of every possible favorable inference." (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002] [internal quotation marks and citations omitted].) The court is not permitted "to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action" (*Skillgames, LLC v Brody*, 1 AD3d 247, 250 [1st Dept 2003] [internal citation omitted].) Nevertheless, "factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration." (*Id.* [internal citation omitted].)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 13 of 41
Motion No. 001

13 of 41

A motion to dismiss pursuant to CPLR 3211 (a) (1), "on the ground that the action is barred by documentary evidence, . . . may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." (*Goshen*, 98 NY2d at 326.)

### A. Breach of Contract against Owner (First and Second Causes of Action)

Defendants contend that the second cause of action, which alleges that Owner breached sections 3 (b), (d) and (h) of the PPA, should be dismissed, because all of the alleged conduct was either expressly permitted under the PPA or not otherwise prohibited.   They argue that Owner did not violate section 3 (b) or (h), as Owner did not enter, amend, or enforce an agreement between an Equity Party and an Affiliate, did not add a new member into Holdings or itself, and took no action with respect to the strict foreclosure or HFZ's pledge to Monroe.  Defendants point out that the strict foreclosure was proposed by Mezzanine Lender, pursuant to its rights as lender, and that the foreclosure was inevitable.  Defendants also argue that there is nothing amiss with Monroe affiliates being on both sides of the Mezzanine Loan and that plaintiff is equitably estopped from arguing otherwise as it never objected to Fortress, and later HFZ, being on both sides of the Mezzanine Loan.  In addition, defendants argue that section 3 (d) was not breached, because the purpose of Holdings and Owner was not changed, as defendants' plans for the Property are consistent with "Business" as defined in the PAA.  Lastly, defendants contend that HFZ's pledge, in connection with the HFZ-Monroe Loan, was permitted under section 17 (d) of the PPA.  As such, they reason, the entire claim fails.

[* 14]

As concerns the first cause of action, defendants argue that it should be dismissed because it fails to specify which of the PPA's provisions were breached and is entirely duplicative of the second the third causes of action.

Plaintiff responds that section 3 (b), prohibiting Owner from "amending ... any agreement between any Equity Party ... and any of its Affiliates," was breached when Owner unilaterally agreed to amend the terms of the Mezzanine Loan Agreement to install Monroe as the owner of Mezzanine Lender, because Mezzanine Lender was now an Affiliate of Mezzanine Borrower, as both were now owned by Monroe. Plaintiff also argues that Owner breached section 3 (h)'s prohibition on unilaterally admitting "a new member into ... Owner" by assenting to the strict foreclosure and admitting Mezzanine Lender as its 100% member in place of Mezzanine Borrower and, thereby, reducing plaintiff's Profit Percentage below 50%. According to plaintiff, its allegations that Owner took such actions must be accepted as true on this motion. As concerns section 3(d), plaintiff contends that it is irrelevant that the purpose of the Property remains the same, since the provision prohibits a change to the purpose or business of Holdings, which was unquestionably changed when it was left with nothing to hold.

Regarding the first cause of action for material breach of the PPA, plaintiff argues that the claim incorporates all prior allegations, which specify which provisions of the PPA Owner breached. Plaintiff also contends that this claim is not duplicative of the implied covenant of good faith and fair dealing claim, because it concerns breaches of the PPA's express provisions. Lastly, it argues that the claim is not duplicative of the second cause of action, because, unlike that claim, it contains the allegation that the combined effect of all of the breaches was to frustrate the purpose of the entire PPA.

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 15 of 41
Motion No.  001

15 of 41

To state a claim for breach of contract a plaintiff must allege "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010].)

Defendants' contention, that section 17 (d) expressly permits the conduct complained of, is unpersuasive. Section 17 (d) defines what constitutes a "permitted Transfer" as "any pledge or encumbrance of any indirect ownership interests of Sponsor to an institutional lender in the ordinary course of such indirect owner of Sponsor's business (and the foreclosure of such pledge or encumbrance)." (NYSCEF 3, PPA § 17 [d].) Defendants offer no documentary evidence to establish that HFZ's pledge of its interests in the Shore Club Entities was in ordinary course of HFZ's business. Nor do defendants point to any allegations in the complaint to support this conclusion. In fact, the complaint contains numerous allegations that permit a contrary inference, including that the loan proceeds were not used to benefit the Project and that HFZ's owners have become embroiled in a dispute, with one accusing the other of misappropriating millions for personal use while creating false books and records. (*See* NYSCEF 2, Complaint, ¶¶ 69, 70, 79.)

Additionally, simply because plaintiff previously permitted affiliates of Fortress and HFZ to be on both sides of the Mezzanine Loan, in no way estops plaintiff from challenging Monroe doing so. Fortress and HFZ were plaintiff's partners in the joint venture, and, as concerns Fortress, plaintiff expressly consented to its affiliates being on both sides of the Mezzanine Loan. (*See* NYSCEF 3, PPA, Schedule 1, [providing that "FCC or the lenders under the FCC Loans shall be deemed not to be an Affiliate of

[* 16]

the Equity Parties"]; NYSCEF 4, JV Agreement, § 10.18 [acknowledging that Fortress held an "an indirect ownership interest in (Owner)" and was also a lender under the FCC Loans through its affiliates, CFSC and FCC]; NYSCEF 23, Consent Letter.) Monroe, on the other hand, is a stranger to plaintiff and assumed ownership of Mezzanine Lender and Mezzanine Borrower without giving plaintiff notice or seeking plaintiff's consent. Under these circumstances, it cannot be said that plaintiff is seeking to "assert[] a right after having led another to form the reasonable belief that the right would not be asserted." *757 3rd Ave. Assoc., LLC v Patel*, 117 AD3d 451, 453 [1st Dept 2014] [internal quotation marks and citation omitted].) As such, plaintiff is not equitably estopped from asserting its breach of contract claim.

Nonetheless, plaintiff fails to state a claim for breach of contract based on violations of section 3 (b), (d) or (h) of the PPA.

First, plaintiff alleges that Owner breached section 3 (b) when it "facilitate[ed] Monroe's placing itself on both sides of the Mezzanine Loan" and, thereby, "permit[ed] Mezzanine Borrower, an 'Equity Party,' to *in effect* amend the terms of the Mezzanine Loan with Mezzanine Lender, an 'Affiliate.'" (NYSCEF 2, Complaint, ¶ 117 [emphasis added].) Tellingly, plaintiff does not allege that Owner amended the Mezzanine Loan Agreement, but that it "in effect" did so. (*Id.*) The complaint is devoid of any supporting factual allegations of conduct by Owner. As concerns the initial pledging of HFZ's interests in the Shore Club Entities as collateral for the Monroe-HFZ Loan, this was allegedly done by HFZ and did not involve Owner. (*See id.* ¶¶ 79, 95.) Upon HFZ's default on the loan, HFZ allegedly assigned its interests in Mezzanine Lender, Sponsor, Holdings, Mezzanine II, Mezzanine Borrower, and Owner to Monroe. (*Id.* ¶¶ 80, 81.)

[* 17]

While plaintiff alleges that "[t]he Shore Club Entities, including Owner, assented to HFZ's . . . assignments to Monroe," as these assignments were between HFZ and Monroe, this did not involve Owner "entering into or amending or enforcing any agreement between any Equity Party [e.g. Mezzanine Borrower], on the one hand, and any of its Affiliates [e.g. Mezzanine Lender], on the other hand" (*Id.* ¶ 82; NYSCEF 3, PPA, § 3 [b].)  Only after these assignments were completed did Mezzanine Lender and Mezzanine Borrower become "Affiliates" as defined under the PPA (i.e. entities with common ownership).  (*See id.*, Schedule 1.)

As for the strict foreclosure that followed, nothing in the complaint indicates that Owner was involved.  Rather, as alleged, the foreclosure involved Mezzanine Lender and Mezzanine Borrower and resulted in Mezzanine Lender owning Mezzanine Borrower's 100% equity interest in Owner.  (*See* NYSCEF 2, Complaint, ¶ 88 [alleging that "pursuant to a strict foreclosure . . . , Mezzanine Borrower transferred the membership interests of Owner to Mezzanine Lender" (internal quotation marks omitted)].)  Plaintiff's conclusory allegations that Owner "permit[ted] this foreclosure" (*id.* ¶ 86.) does not indicate what, if anything, Owner should have or could have done to prevent it. In any event, "[o]bjecting to the strict foreclosure would have only changed the form of disposition, not whether the debt would be discharged or the collateral disposed." (*AmBase Corp. v 111 W. 57th Sponsor LLC*, 2022 N.Y. Slip Op. 31503[U] * 4 [Sup Ct, New York County 2022], *affd as mod* 221 AD3d 521 [1st Dept 2023] [granting dismissal of a breach of contract claim for failure to state a claim].)

Moreover, defendants correctly point out that the strict foreclosure did not breach the PPA.  First, it is undisputed that Mezzanine Borrower's pledge of its interest in

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL        Page 18 of 41
Motion No.  001

18 of 41

[* 18]

Owner was permitted under the PPA. (*See* NYSCEF 26, Plaintiff's Brief In Opposition at 14 n 3.) Second, section 22 of the PPA expressly provides that the PPA "shall in no event be binding on, and shall be subordinate to, any loan or other indebtedness made to or incurred by Equity Parties including, without limitation, any mortgage loan or mezzanine loan." (NYSCEF 3, PPA § 22.) As Mezzanine Borrower was an "Equity Party" under the PPA (*see id.* at recitals), the PPA was subordinate to the Mezzanine Loan. Therefore, the subsequent strict foreclosure on that loan could not be in breach of the PPA.

Plaintiff's allegations that Owner breached sections 3 (d) and (h) also fail to state a claim. The complaint does not offer anything beyond conclusory allegations that the Owner "acced[ed] to" or "facilitate[ed]" the strict foreclosure (NYSCEF 2, Complaint, ¶¶ 111, 117) to demonstrate what "action" Owner took that "change[d] the purpose of Holdings or the Owner" (NYSCEF 3, PPA, § 3 [d]) or how Owner was involved in "the admission of a new member into . . . Owner." (*Id.* § 3 [h].) As alleged, both changes were the result of the strict foreclosure. (NYSCEF 2, Complaint, ¶ 88), in which Owner is not alleged to have played any part.

While the court must accept plaintiff's factual allegations as true, where, as here, those allegations "consist of bare legal conclusions" or are "contradicted by documentary evidence," they "are not entitled to such consideration." (*Skillgames*, 1 AD3d at 250.) Therefore, the second cause of action fails to state a claim for breach of contract. (*See Rimrock High Income Plus (Master) Fund, Ltd. v Avanti Communications Group PLC*, 157 AD3d 543, 543 [1st Dept 2018] [dismissing a breach of contract claim

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 19 of 41
Motion No.  001

19 of 41

for failure to state a cause of action, where it "(was) based on conclusory allegations of collusion"].)

The first cause of action is premised on substantially the same allegations as the second cause of action (*compare* NYSCEF 2, Complaint, ¶¶ 111, *with* Complaint, ¶¶ 117), adding only that Owner's breaches "[were] so pervasive and fundamental that it defeated the object of the parties in entering into the PPA." (*Id.* ¶ 113.) Therefore, it fails for the same reasons.

Accordingly, defendants' motion to dismiss the first and second causes of action is granted.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing against Owner (Third Cause of Action)

Defendants contend that the breach of the implied covenant of good faith and fair dealing claim must be dismissed, because Owner's action (or inaction) did not violate any cognizable implied promise in the PPA. Moreover, they argue, the claim is inconsistent with the express contractual terms. Specifically, defendants contend that: (1) section 22 makes clear that the PPA is subordinate to any loans and a lender's enforcement rights; and (2) an implied promise for the Project to become profitable is inconsistent with section 2, which sets forth the Trigger Events that would lead to the vesting of plaintiff's interest.

Plaintiff responds that Owner, impliedly promised to exercise commercially reasonable efforts to re-develop the Property and to refrain from trying to circumvent the PPA's negative covenants, which were in place to protect plaintiff's unvested interest in Holdings and, indirectly, the Property. Plaintiff contends that, while it bargained for the risk that a lender would foreclose on Owner under section 22, it never bargained for the

**652489/2022 SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**
**Motion No. 001**

Page 20 of 41

20 of 41

risk that HFZ, which was not an "Equity Party" under the PPA, would pledge its indirect interest in Owner as collateral for a $100 million loan that exclusively benefitted HFZ. Plaintiff points out that the PPA sought to protect it against such risk, by prohibiting Sponsor from directly or indirectly pledging Holdings or its sole asset, Owner, without plaintiff's consent.

Every contract contains an implied covenant of good faith and fair dealing. (*Forman v Guardian Life Ins. Co. of Am.*, 76 AD3d 886, 888 [1st Dept 2010].) "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002] [internal quotation marks and citation omitted].) To survive a motion to dismiss, plaintiffs must allege facts demonstrating that defendants sought to prevent performance of the agreement or withhold its benefits from plaintiffs. (*See Jaffe v Paramount Communications*, 222 AD2d 17, 22-23 [1st Dept 1996].) "[P]laintiffs cannot use this claim to nullify other express terms of a contract, or to create independent contractual rights." (*87 Mezz Member LLC v German Am. Capital Corp.*, 162 AD3d 524, 525 [1st Dept 2018] [internal citations and quotation marks omitted].)

Here, plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. Just as with the breach of contract claim, there is a dearth of factual allegations that Owner did anything to deprive plaintiff of its rights under the PPA. The crux of plaintiff's claim is that "the Shore Club Entities, including Owner, abetted Monroe's and Witkoff's scheme to swipe Philips's interests in the Property by enabling a series of secret, related-party deals that left Holdings an assetless shell."

652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 21 of 41
Motion No.  001

21 of 41

(NYSCEF 26, Plaintiff's Brief In Opposition at 12.)  However, plaintiff's conclusory allegations that Owner "permitted" or "enabled" such conduct (NYSCEF 2, Complaint, ¶¶ 82, 86) are insufficient to support the claim.  (*See Phoenix Capital Invs. LLC v Ellington Mgt. Group, LLC*, 51 AD3d 549, 550 [1st Dept 2008] [stating that plaintiff's allegation, "that defendant contrived with [another entity] . . . so as to avoid paying plaintiff its fee," was conclusory]; *see also Jaffe*, 222 AD2d at 23 [affirming dismissal of the claim, where plaintiff failed to allege "facts to demonstrate that (the defendant) deprived him of any rights he had under the Agreement"].)

Accordingly, defendants' motion to dismiss the third cause of action is granted.

C. Tortious Interference with Contract against Monroe and Witkoff and Aiding and Abetting Tortious Interference with Contract against Witkoff (Fourth and Sixth Causes of Action, Respectively)

Defendants contend that the tortious interference with contract claim must be dismissed, because there was no underlying breach of the PPA.  In addition to their arguments regarding section 3, defendants contend that HFZ's pledge to Monroe was a "permitted Transfer" under section 17 (d).  In any event, defendants contend, the claim fails because, as HFZ's creditor, Monroe was simply protecting its economic interests. Lastly, they argue that the aiding and abetting claim fails without an underlying tort.

Plaintiff responds that it sufficiently alleges that: (1) HFZ's pledge and subsequent assignments of its interests in the Shore Club Entities, as well as the Shore Club Entities' assent to the strict foreclosure, breached section 17 (a); (2) the assignment of HFZ's ownership interests in the Shore Club Entities and the transfer of Holding's interest in Owner to Monroe were not permitted under section 17 (c), because neither HFZ nor Fortress remained in control after these transfers; and (3) the pledge to

**652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**                          **Page 22 of 41**
**Motion No.  001**

22 of 41

Monroe of HFZ's interests in the Shore Club Entities, to secure a secret, non-ordinary course loan for HFZ's exclusive benefit, was in breach of section 17 (d). Plaintiff also argues that the economic interest defense does not apply, because, at the time that Monroe procured the initial breach of the PPA (the pledge of HFZ's interests in the Shore Club Entities), Monroe had no economic interest in a breaching party. Additionally, plaintiff contends that defendants cannot rely on Monroe's creditor status to defend subsequent conduct (i.e. accepting the assignments of the membership interests of the Shore Club Entities and the strict foreclosure), as that status was tortiously acquired. Plaintiff also argues that Monroe had no economic justification in conducting a strict foreclosure on the Mezzanine Loan, as it had already repaid the Mezzanine Loan-on-Loan and faced no threat to its collateral. Plaintiff contends that defendants were motivated by malice and that their malice is further evidenced by their concealment of Monroe's takeover of the Shore Club Entities from plaintiff even as plaintiff was litigating over control of the Property. Lastly, plaintiff argues that the applicability of the economic interest defense cannot be determined on a pre-answer motion to dismiss.

"To state a claim for tortious interference with contract, a plaintiff must allege (1) the existence of a valid contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procuring of the breach of that contract, and (4) damages." (*111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 220 AD3d 435, 436 [1st Dept 2023] [internal citations omitted].) "In response to such a claim, a defendant may raise the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business," such as "where defendant was the breaching party's

652489/2022 SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL
Motion No. 001

Page 23 of 41

[* 23]

23 of 41

creditor." (*White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 426 [2007].) Where the applicability of the defense is evident on the face of the complaint, plaintiff cannot state a viable claim, unless there are allegations of malice or illegality. (*111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 2022 NY Slip 34258[U] *11 [Sup Ct, New York County 2022], *affd as mod* 220 AD3d 435 [1st Dept 2023]; *Collins v E-Magine, LLC*, 291 AD2d 350, 351 [1st Dept 2002] ["(a)s a general matter, economic interest precludes a claim for tortious interference with a contract unless there is a showing of malice or illegality"].)

The tortious interference claims will be dismissed if "plaintiff . . . fail[s] to sufficiently plead an underlying breach of contract." (*111 W. 57th Inv. LLC*, 220 AD3d at 436.) The interpretation of an unambiguous contract is a question of law for the court (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 192 [1st Dept 1995)]), as is the determination of whether a contract is ambiguous. (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990].) In interpreting a contract, the court must consider the parties' intentions, "[t]he best evidence of [which] . . . is what they say in their writing." (*Banco Espírito Santo, S.A. v Concessionária Do Rodoanel Oeste S.A.*, 100 AD3d 100, 106 [1st Dept 2012] [internal quotation marks and citation omitted].) In interpreting a contract, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks and citation omitted].)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL      Page 24 of 41
Motion No.  001

24 of 41

"The aiding and abetting . . . claim will stand[ ] or fall[ ] with the underlying tort . . . ." (*Iberdrola Energy Projects v MUFG Union Bank, N.A.*, 218 AD3d 409, 410 [1st Dept 2023] [internal quotation marks and citation omitted].)

To the extent that the claim for tortious interference with contract is premised on Sponsor's assent to the strict foreclosure, the claim fails to allege a breach of section 17 (a). Section 17 (a) prohibits Sponsor from transferring "any part of its interest in Holdings." (NYSCEF 3, PPA, § 17 [a].) As the factual allegations of the complaint make clear, the strict foreclosure did not involve Sponsor or any "Transfer" of its interest in Holdings. The strict foreclosure involved the Mezzanine Lender foreclosing on the Mezzanine Loan, for which the Mezzanine Borrower had pledged *its* interest in Owner. (NYSCEF 2, Complaint, ¶ 81.) Plaintiff does not dispute that Mezzanine Borrower's pledge was permitted under the PPA. (*See* NYSCEF 26, plaintiff's brief in opposition at 14 n 3.) As alleged, the strict foreclosure of the Mezzanine Loan did not breach of section 17 (a). Therefore, it does not support a claim for tortious interference with contract. (*See 111 W. 57th Inv. LLC*, 220 AD3d at 436.)

The complaint also fails to state a claim to the extent it is premised on breaches of section 17 (c) or (d). Neither provision contains a prohibition or a covenant. Rather, they define categories of permitted Transfers under the PPA. Section 17 (c) describes the circumstances when "Transfers . . . of direct or indirect ownership interests in any Party shall be freely permitted," specifically, when "one or more of the Principals of the Party shall collectively or individually maintain Control of such Party." (NYSCEF 3, PPA § 17 [c].) It also makes clear that it supersedes "anything to the contrary contained [in the PPA]" (*id.),* such as a Transfer in violation of section 17 (a). Similarly, section 17 (d)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 25 of 41
Motion No. 001

25 of 41

[* 25]

states what constitutes a "permitted Transfer [under the PPA]." Specifically, it permits a "pledge or encumbrance of any indirect ownership interests of Sponsor to an institutional lender in the ordinary course of such indirect owner of Sponsor's business (and the foreclosure of such pledge or encumbrance)." (*Id.* § 17 [d].)

Plaintiff's reading of 17 (c) —that it prohibits any Transfer of ownership interests in any Party if the Principals of that Party do not retain control of the Party after transfer and that the "[n]otwithstanding anything to the contrary" language means that 17 (c) supersedes 17 (d) (*see* NYSCEF 40, Oral Arguments Tr at 24, line 12, through 25, line 16; NYSCEF 2, Complaint, ¶ 56)—distorts the plain language of the PPA. First, nothing in section 17 (d) is contrary to 17 (c), both merely describe conditions under which a Transfer is permitted. Second, had the parties intended 17 (c) to act as a prohibition they could have easily done so by providing that a Transfer is permitted unless it results in a prohibited change of control. Indeed, this was precisely the language used in the Mezzanine Loan Agreement. (*See* NYSCEF 22, Mezzanine Loan Agreement Part 2, § 6.3 [stating that "(Mezzanine) Borrower shall be freely permitted . . . to Transfer direct or indirect interests in (Mezzanine) Borrower so long as a Prohibited Change of Control or Prohibited Pledge shall not occur as a result of such Transfer"]; NYSCEF 21, Mezzanine Loan Agreement Part 1 at 15 [defines "Prohibited Change of Control" as "an event that shall have occurred if (Owner) or (Mezzanine) Borrower ever ceases to be Controlled by either or both of HFZ or CFSC"].) However, that was not the chosen language for 17 (c). Instead, section 17 (c) states that a Transfer is permitted if control of the Party remains substantially same. Under this phasing, there is no built-in prohibition. The parties must look elsewhere in the PPA for that.

**652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**       **Page 26 of 41**
**Motion No.  001**

26 of 41

Similarly, plaintiff's reading of 17 (d) extrapolates from what is there to create a prohibition that is not there. Simply because the provision permits a "pledge or encumbrance of any indirect ownership interests of Sponsor" does not mean that, as plaintiff contends, it prohibits any "pledge or encumbrance of ownership interests of the remaining Shore Club Entities (i.e., Holdings and Owner)." (NYSCEF 2, Complaint, ¶ 133; *see also* NYSCEF 26, Plaintiff's Brief In Opposition at 15 [contending that "PPA barred Sponsor and Holdings from unilaterally pledging the ownership interests of their subsidiaries (Holdings and Owner) to secure a secret, non-ordinary course loan"].)

In addition, plaintiff's reading is contrary to section 24, which provides that, "other than as *expressly set forth* in this Agreement . . . Philips shall have no management, approval, consent, control, notice, veto or voting rights whatsoever with respect to actions of, or matters relating to, any Equity Party." (NYSCEF 3, PPA § 24 [emphasis added].)

As neither section 17 (c) nor (d) contains the prohibitive language that plaintiff relies on for its claim (*see* NYSCEF 2, Complaint, ¶¶ 56, 57, 132, 133), the court will not read such language into the PPA. (*See Donohue v Cuomo*, 38 NY3d 1, 12 [2022] ["(w)here a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include" (internal quotation marks and citation omitted)]; *see also Vermont Teddy Bear Co.*, 1 NY3d at 475.) Therefore, to the extent that the tortious interference with contract claim is premised on breaches of section 17 (c) and (d), the complaint fails to state a cause of action. (*See 111 W. 57th Inv. LLC*, 220 AD3d at 436.)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL                Page 27 of 41
Motion No.  001

27 of 41

However, plaintiff's remaining allegations sufficiently allege that Sponsor "Transfer[red]" its interest in Holdings to Monroe in violation of section 17 (a). A "Transfer" is defined to include "assignment, sale, exchange, transfer, pledge, hypothecation or other disposition," whether done "directly or indirectly, by operation of law or otherwise." (NYSCEF 3, PPA, § 17 [a].) Plaintiff alleges such "Transfer[s]" occurred when HFZ pledged its interest in the Shore Club Entities to secure the HFZ-Monroe Loan and, after default, assigned its interests in those entities to Monroe. (*See* NYSCEF 2, Complaint, ¶¶ 79, 80, 94, 95, 131.)

Defendants argue that "Plaintiff's shorthand references to HFZ pledging 'Owner (and the Property)' as part of the Monroe-HFZ Loan ignores that Monroe held indirect interests in Owner after HFZ pledged Sponsor to Monroe" and that "Monroe . . . acceded to be the indirect owner of Owner, Holdings, and other entities in the chain by virtue of Sponsor's position." (NYSCEF 27, Reply Brief at 4 n 2, quoting plaintiff's brief at 20.) Yet defendants ignore that section 17 (a) expressly provides that "any Transfer of any direct or indirect equity interest in Sponsor . . . shall be deemed a Transfer of [Sponsor's] interest in Holdings." (NYSCEF 3, PPA, § 17 [a].) Therefore, plaintiff states a claim for HFZ's pledge and assignment of its interest in Sponsor in violation of § 17 (a).

To the extent that defendants argue that this pledge and assignment were "permitted Transfer[s]" under section 17 (d), as explained above, defendants do not offer any documentary evidence to demonstrate that HFZ made its pledges to Monroe "in the ordinary course of [HFZ's] business" (*id.*, § 17 [d]) and nothing in the complaint permits this conclusion.

Nor can defendants rely on the economic interest defense to justify their procurement of the initial breach of section 17 (a). Prior to granting the HFZ-Monroe Loan and gaining a security interest in Sponsor, Monroe had no economic interest in Sponsor, the alleged breaching party. Therefore, the defense is completely inapplicable to the procurement of the initial breach of section 17 (a). (*See Normandy Real Estate Partners LLC v 24 E. 12th St. Assoc. LLC*, 168 AD3d 429, 430-31 [1st Dept 2019] [finding that defendant failed to establish the economic defense where "it did not appear to have a prior contractual or economic relationship with (the breaching party)"].)

Notably, as concerns HFZ's assignments of its interests in the Shore Club Entities to Monroe, the economic interest defense is ostensibly apparent on the face of the complaint. Plaintiff alleges that HFZ had pledged its interest in Sponsor as security for the HFZ-Monroe Loan, that the loan was in default, that HFZ was unable to cure the default or repay the loan and that Monroe accepted the assignments in partial satisfaction of the debt. (NYSCEF 2, Complaint, ¶¶ 79, 80.) However, as plaintiff also alleges that Monroe's creditor status was tortiously obtained through procuring a breach of the PPA, the economic interest defense does not require dismissal of this branch of plaintiff's claim. (*See 111 W. 57th Inv. LLC*, 2022 N.Y. Slip Op. 34258[U] at *11; *see also Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004] [explaining that conduct rises to the level of illegality when it is "criminal or tortious"].)

Defendants make no arguments that would require dismissal of the aiding and abetting claim other than to argue that plaintiff fails to sufficiently allege the underlying tortious interference claim. Therefore, to the extent the tortious interference claim

652489/2022 SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL
Motion No. 001

Page 29 of 41

survives the motion to dismiss, so does the aiding and abetting claim against Witkoff. (*See Iberdrola Energy Projects*, 218 AD3d at 410.)

Accordingly, the motion to dismiss is granted to the extent of dismissing all portions of the fourth and sixth causes of action other than those premised on the initial procurement of HFZ's pledge of its interests in the Shore Club Entities and the subsequent assignments of these interests to Monroe.

D. <u>Tortious Interference with Prospective Economic Advantage against Monroe and Witkoff and Aiding and Abetting Tortious Interference with Prospective Economic Relations against Witkoff (Fifth and Seventh Causes of Action, Respectively)</u>

Defendants contend that the tortious interference with prospective economic relations claim must be dismissed, because plaintiff fails to allege that defendants' interference with plaintiff's prospective relations was motivated solely by malice or that it amounted to a crime or an independent tort. They also argue that, without an underlying claim, that aiding and abetting claim fails.

Plaintiff concedes that it "never alleged that Monroe's and Witkoff's conduct was 'aimed solely at harming' it." (*See* NYSCEF 26, Plaintiff's Brief in Opposition at 18.) However, plaintiff agues, that is because the claim is premised on the wrongful means that defendants employed to destroy plaintiff's unvested interest in the Property, specifically: (1) their tortious interference with the PPA, and (2) the collusive strict foreclosure without notice to plaintiff.

> "A claim for tortious interference with a prospective business relationship (i.e., an economic advantage) must allege: (1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the

**652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**
**Motion No.  001**

**Page 30 of 41**

30 of 41

sole purpose of malice; and (4) resulting injury to the business relationship." (*534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick*, 90 AD3d 541, 542 [1st Dept 2011] [internal citations omitted].)

As the claim involves only interference with prospective economic rights, rather than a breach of a contract, more culpable conduct on the part of the defendant is required. (*Devash LLC v German Am. Capital Corp.*, 104 AD3d 71, 79 [1st Dept 2013], *lv denied* 21 NY3d 863 [2013].) "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." (*Carvel Corp*, 3 NY3d at 190.)

To the extent plaintiff attempts to state a claim based on the strict foreclosure, it fails to allege wrongful means. Plaintiff claims that defendants were aware of its unvested interest in Owner through plaintiff's complaint in the Miami-Dade County Action and that defendants failed to provide the required notice of the foreclosure under UCC § 9-621. (*See* NYSCEF 26, Plaintiff's Brief in Opposition at 19-20.) In pertinent part, UCC § 9-621 provides that:

> "[a] secured party that desires to accept collateral in full or partial satisfaction of the obligation it secures shall send its proposal to:
>
> > "(1) any person from which the secured party has received, before the debtor consented to the acceptance, an authenticated notification of a claim of an interest in the collateral." (UCC § 9-621 [a] [1].)

Even assuming, that the service of the complaint in the Miami-Dade County Action constitutes "authenticated notification" on defendants, this was notice of plaintiff's

652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL      Page 31 of 41
Motion No. 001

31 of 41

unvested interest in Holdings, and, thereby, its unvested, indirect interest in Owner. Nothing in the statute indicates that such an attenuated interest is what is meant by "a claim of an interest in the collateral." Indeed, the only other persons entitled to notification under the statute are secure parties and lienholders (*see* UCC § 9-621 [a] [2]) and, in the event that a creditor fails to comply with the notice requirement, damages are available to "a person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral." (UCC § 9-625 [c] [1].) Plaintiff's unvested interest in Holdings does not fit into any of these categories.

Plaintiff's reliance on *Shabtai v HFZ Capital Group, LLC* (75 Misc 3d 1226[A], 2022 N.Y. Slip Op. 50699[U] [Sup Ct, New York County 2022], *appeal dismissed* 220 AD3d 471 [1st Dept 2023], *lv denied* 41 NY3d 906 [2024]) is misplaced. In that action, the plaintiff had purchased a minority membership interest in HFZ Shore Club LLC, the managing member of Sponsor. (*See id.* at *2-3.) The parties had agreed that the plaintiff's "$3.5 million investment . . . was to be used solely in connection with the renovation and repositioning of the Property" and that he would redeem his shares to purchase units on the eighteenth floor of the converted Property (*Id. at *3.*) The court found that Monroe, as successor in interest to HFZ entities, owed plaintiff a fiduciary duty and that defendants "intentionally, in bad faith, and without notice to its minority member, divested [the plaintiff] of his beneficial ownership in the Property and ultimately dissolved HFZ Shore Club [LLC] so that they could avoid their obligation to pay him the money owed to him." (*Id.* at *2.) As that case involved a plaintiff with a vested membership interest, it is entirely distinguishable from this case.

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL         Page 32 of 41
Motion No.  001

32 of 41

Plaintiff's reliance on *Industrial Tech. Ventures, L.P. v Pleasant T. Rowland Revocable Tr.* (280 FRD 86, 95-96 [WD NY 2012)) is similarly distinguishable. There, the court did not take issue with the defendants' use of its foreclosure right in and of itself. (*See* 280 FRD at 95.) Rather, it found that the "allegations [were] adequate to support a claim of tortious interference on the ground that defendants threatened to foreclose for the sole and malicious purpose of interfering with [the plaintiff's] business relationship." (*Id.* at 96.) Here, plaintiff does not seek to establish malice.

Nonetheless, contrary to defendants' contentions, the tortious interference with economic advantage claim does not lack a predicate independent tort. (*See* NYSCEF 27, Reply Brief at 9.) As discussed above, plaintiff sufficiently alleges that defendants procured a breach of section 17 (a) of the PPA. Plaintiff also alleges that this, ultimately, led to the loss of plaintiff's ability to participate in the JV Agreement (*see* NYSCEF 2, Complaint, ¶¶ 137-140), giving these allegations the benefit of every favorable inference, the complaint states a claim for tortious interference with economic advantage. (*See Ullmannglass v Oneida, Ltd.*, 86 AD3d 827, 829-830 [3d Dept 2011], *affd* 121 AD3d 1371 [3d Dept 2011] [finding that the plaintiffs' "cause of action for tortious interference with contractual relations (was) a sufficient independent cause of action providing the predicate wrongful conduct for their tortious interference with prospective contractual relations claim," where the contract breached automatically renewed and so the "defendants' tortious interference with that contract may have directly resulted in harm to its prospective contractual and business relations"].)

As defendants make no arguments that would require dismissal of the aiding and abetting claim, other than to argue that plaintiff fails to sufficiently allege the underlying

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 33 of 41
Motion No. 001

[* 33]

33 of 41

tortious interference claim, the aiding and abetting claim survives to the same extent as the underlying tort. (*See Iberdrola Energy Projects*, 218 AD3d at 410.)

Accordingly, the motion to dismiss is granted to the extent of dismissing all portions of the fifth and seventh causes of action other than those premised on tortious interference with the PPA.

### E. Remedies

#### i. Rescission

Defendants contend that recission is unavailable where, as here, damages are adequate. In addition, they argue that it would cause the inequitable result of plaintiff receiving a fee simple interest in a property that had been rehabilitated and refinanced at the expense of others since 2013.

Plaintiff responds that it is permitted to seek rescission in the alternative and that it is too early in the litigation to determine whether damages will be sufficient. In addition, plaintiff argues that, since defendants engineered the changes in the parties' positions, they should not be permitted to exploit those changes to disallow rescission.

Having dismissed the first cause of action, the court does not address whether plaintiff is entitled to seek rescission of the PPA, the remedy sought in connection with that claim, except to note that "the equitable remedy of rescission is not available where there is an adequate legal remedy, and [that] plaintiff does not explain why damages—a legal remedy—would be insufficient." (*Empire Outlet Bldrs. LLC v Construction Resources Corp. of N.Y.*, 170 AD3d 582, 583 [1st Dept 2019] [affirming grant of motion to dismiss].)

ii. Permanent Injunction

Plaintiff seeks "[a]n injunction requiring Monroe and Witkoff to unwind the transfer of Owner to Monroe, restore Plaintiff's ownership of the Shore Club Property, and vacate any and all liens or encumbrances that either or both of them, directly or indirectly, may have asserted over, placed on, or allowed to be placed on Owner or the Shore Club Property." (NYSCEF 2, Complaint at 47, Prayer for Relief.) Defendants contend that plaintiff is not entitled to a permanent injunction, because it cannot show irreparable harm. They argue that plaintiff, a holder of a contingent profit participation right in a joint venture, is not facing the risk of losing a unique property, but the risk of lost profits only.

Plaintiff responds that defendants' argument is premature. It argues that, should the court find that plaintiff is not entitled to damages and that the Property is unique, plaintiff will be entitled to a permanent injunction granting it ownership of the Property. Plaintiff also argues that defendants' reliance on cases denying preliminary injunctions is misplaced, as plaintiff is seeking a permanent injunction.

> "To sufficiently plead a cause of action for a permanent injunction, a plaintiff must allege that there was a violation of a right presently occurring, or threatened and imminent, that he or she has no adequate remedy at law, that serious and irreparable harm will result absent the injunction, and that the equities are balanced in his or her favor. A permanent injunction is a drastic remedy which may be granted only where the plaintiff demonstrates that it will suffer irreparable harm absent the injunction." (*Swartz v Swartz*, 145 AD3d 818, 828 [2d Dept 2016] [internal quotation marks and citations omitted]; *see Lemle v Lemle*, 92 AD3d 494, 500 [1st Dept 2012].)

Here, plaintiff repeatedly alleges that it has been irreparably injured. (*See* NYSCEF 2, Complaint, ¶¶ 19, 135, 142, 148, 154.) However, the only injury described

**652489/2022  SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**          **Page 35 of 41**
**Motion No.  001**

35 of 41

is that of being deprived of the opportunity to share in the profits that will be generated by the redeveloped Property. (*See id.* ¶¶ 130, 140, 145, 151.) Plaintiff's loss of its right to profit participation does not constitute irreparable injury, as "even lost profits that are difficult to ascertain can be compensated by money damages." (*Broadway 500 W. Monroe Mezz II LLC v Transwestern Mezzanine Realty Partners II, LLC*, 80 AD3d 483, 484 [1st Dept 2011] [internal citation omitted].) Although plaintiff's claim stems from its purported interests in the Property, "[s]ince plaintiff['s] interest in the real estate is commercial, and the harm [it] fear[s] is the loss of [its] investment, as opposed to loss of [its] home or a unique piece of property in which [it has] an unquantifiable interest, [plaintiff] can be compensated by damages and therefore cannot demonstrate irreparable harm." (*Id.* [internal quotation marks and citation omitted]; *see CMB Export Infrastructure Inv. Group 48, LP v Motcomb Estates, Ltd.*, — AD3d —, 2024 N.Y. Slip Op. 00223, *1 [1st Dept 2024] [same].)[3]

Accordingly, to the extent defendants seek dismissal of those portions of the complaint that seek a permanent injunction, the motion to dismiss is granted.

### iii. Constructive Trust

Defendants contend that plaintiff is not entitled to a constructive trust, because it fails to plead that defendants: (1) made a promise to plaintiff; (2) were in a fiduciary

---

[3] The cited cases deal with preliminary injunctions, rather than permanent injunctions. However, as both require a showing that plaintiff faces injury that cannot be compensated by money damages (*compare Lemle*, 92 AD3d at 500 [addressing a claim for a permanent injunction], *with Broadway 500 W. Monroe Mezz II LLC*, 80 AD3d at 484 [addressing a request for a preliminary injunction]), cases denying a preliminary injunction on the ground that lost profits, as a matter of law, do not constitute irreparable harm are pertinent.

**652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL**          **Page 36 of 41**
**Motion No.  001**

36 of 41

[* 36]

relationship with plaintiff; (3) received a transfer from plaintiff; and (4) were, thereby, unjustly enriched.

Plaintiff responds that these elements are merely guidelines and that a constructive trust may still be imposed even where only some of the elements are present.

Generally, "[a] party claiming entitlement to a constructive trust must establish: (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment." (*Wachovia Sec., LLC v Joseph*, 56 AD3d 269, 271 [1st Dept 2008] [internal quotation marks and citation omitted].) However, "the power of equity to employ a constructive trust to reach a just result is not strictly limited by (these) conditions. . . . Rather, the remedy is available to prevent unjust enrichment in a wide range of circumstances." (*Palazzo v Palazzo*, 121 AD2d 261, 264 [2d Dept 1986] [internal citations omitted]; *see Dawson v Vasquez*, 139 Misc 2d 588, 591-592 [Sup Court, Rockland County 1988], *affd* 153 AD2d 836 [2d Dept 1989] [imposing a constructive trust in absence of a fiduciary relationship, a promise and a transfer in reliance, where there was unjust enrichment].) Thus, a constructive trust will be imposed "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest," even in the absence of "any wrongful act by the one enriched." (*Simonds v Simonds*, 45 NY2d 233, 241, 242 [1978] [internal quotation marks and citations omitted]; *see Homapour v Harounian*, 182 AD3d 426, 427 [1st Dept 2020] [same].)

Here, plaintiff alleges that it contributed the Property to a joint venture, with the expectation of becoming a vested member in the venture once the Property was

redeveloped and made profitable, and that defendants were unjustly enriched at plaintiff's expense, when they gained control of the Shore Club Entities and conducted the strict foreclosure for the sole purpose of eliminating plaintiff's membership and profit participation interests in the Property. (NYSCEF 2, Complaint, ¶¶ 3, 4, 41, 86-91, 104; *see Metropolitan Bank & Trust Co. v Lopez*, 189 AD3d 443, 444-445 [1st Dept 2020] [stating that to "to successfully plead unjust enrichment a plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (internal quotation marks and citations omitted)].) Thus, even in the absence of other elements, plaintiff sufficiently alleges entitlement to a constructive trust. (*Compare Haberberg v G.F.A. Advanced Sys. Ltd*, 137 AD3d 481, 482 [1st Dept 2016] [finding that plaintiffs stated a claim for a constructive trust and explaining that "(t)he absence of a . . . fiduciary relationship (was) not dispositive . . . , because the enrichment (did) not arise from plaintiffs' having been induced to act," but rather from "the taking of their property to satisfy the obligations of entities unrelated to them"], *with Wachovia Sec., LLC v Joseph*, 56 AD3d 269, 271 [1st Dept 2008] [finding that "(t)he record (did) not support (the plaintiff's) allegations of injustice or unjust enrichment" and that "the absence of a fiduciary relationship between . . . sophisticated entities defeat(ed) any entitlement to a constructive trust"].)

Therefore, to the extent defendants seek dismissal of those portions of the complaint that seek a constructive trust, the motion to dismiss is denied.

      iv. <u>Punitive Damages</u>

Defendants contend that plaintiff is not entitled to punitive damages as it has not alleged that Monroe and Witkoff's conduct was wanton, reckless, or malicious or part of a pattern of similar conduct directed at the public generally.

Plaintiff responds that it sufficiently alleges that Monroe and Witkoff willfully and maliciously disregarded its rights and destroyed its interests in the Property while concealing their conduct from plaintiff and the courts. Plaintiff also argues that it need not allege misconduct directed at the public, as such a showing is only required where the tortious conduct is directly related to the parties' contractual relationship and plaintiff had no such relationship with Monroe or Witkoff.

> "[T]he standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases, the conduct justifying such an award must manifest spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. . . . Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations." (*Marinaccio v Town of Clarence*, 20 NY3d 506, 511 [2013], *rearg denied* 21 NY3d 976 [2013] [internal quotation marks and citation omitted] [finding that, while the evidence established the tort was intentional, punitive damages were not warranted].)

"The requirement for an award of punitive damages, that a defendant's conduct must be directed at the public generally, applies only in breach of contract cases . . ." (*Sherry Assoc. v Sherry-Netherland, Inc.*, 273 AD2d 14, 15 [1st Dept 2000] [internal quotation marks and citations omitted]; *see Eisenberg v Weisbecker*, 190 AD3d 549, 550 [1st Dept 2021], *lv denied* 37 NY3d 903 [2021].)

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL     Page 39 of 41
Motion No. 001

39 of 41

Here, plaintiff seeks punitive damages in connection with its tort claims only. (See NYSCEF 2, Complaint, ¶¶ 135, 142, 148, 154.) As such, it need not allege that defendants' conduct was part of a pattern directed at the public generally. (See Sherry Assoc., 273 AD2d at 15.) However, the complaint also lacks allegations of moral turpitude or other grievous misconduct. "Mere commission of a tort, even an intentional tort requiring proof of common-law malice, is insufficient; there must be circumstances of aggravation or outrage, or a fraudulent or evil motive on the part of the defendant." (Hoeffner v Orrick, Herrington & Sutcliffe LLP, 85 AD3d 457, 458 [1st Dept 2011] [internal quotation marks and citation omitted] [affirming grant of a motion to strike the plaintiff's demand for punitive damages].) Here, while the allegations establish that defendants' conduct was intentional, nothing in the complaint "evidence[s] such a high degree of moral turpitude and wanton dishonesty as to imply criminal indifference." (Id.) Therefore, to the extent defendants seek dismissal of the demand for punitive damages, the motion is granted. (See Errant Gene Therapeutics, LLC v Sloan-Kettering Inst. for Cancer Research, 174 AD3d 473, 475 [1st Dept 2019] [dismissing the demand for punitive damages, "as (the complaint) (did) not allege that defendants' actions . . . showed the requisite moral turpitude"].)

Accordingly, it is

ORDERED that the motion to dismiss is granted to the extent of dismissing: (1) the first, second, and third causes of action in their entirety; (2) all portions of the fourth and sixth causes of action other than those premised on the initial procurement of the HFZ's pledge of its interests in the Shore Club Entities and the subsequent assignments of these interests to Monroe; (3) all portions of the fifth and seventh causes of action

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 40 of 41
Motion No.  001

40 of 41

other than those premised on tortious interference with PPA; and (4) the demands for a permanent injunction and punitive damages; and it is further

ORDERED that defendants are directed to serve an answer by August 2, 2024; and it is further

ORDERED that counsel are directed to submit a proposed preliminary conference order by August 9, 2024.  If the parties cannot agree to dates, they may submit competing proposed orders.  The court will advise the parties if a conference will be held.

20240710431432AMASLEY88F1D5FCA4F94C138BADC8C5C22BCFF9

| 7/10/2024 | | | | ANDREA MASLEY, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

652489/2022   SC PHILIPS CLARK LLC vs. SHORE CLUB PROPERTY OWNER LLC ET AL          Page 41 of 41
Motion No.  001

41 of 41